924 F.2d 1059
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward Delbert DOSS, Defendant-Appellant.
 No. 90-1447.
 United States Court of Appeals, Sixth Circuit.
 Feb. 6, 1991.
 
 Before ALAN E. NORRIS, Circuit Judge, WELLFORD[1], Senior Circuit Judge; and BALLANTINE, District Judge[2].
 PER CURIAM.
 
 
 1
 Appellant, Edward Delbert Doss was found guilty of possession with intent to distribute heroin and cocaine in violation of Title 21 U.S.C. Section 841(a)(1), possession of a firearm during drug trafficking in violation of 18 U.S.C. Section 924(c) and being a felon in possession of a firearm in violation of Title 18 U.S.C. Sections 922(g)(1) and 924(e). On appeal, Doss contends: 1) he was denied the right to a speedy trial in violation of the Speedy Trial Act, Title 18 U.S.C. Section 3161(b) and the Sixth Amendment and 2) he was denied his Fifth Amendment right to due process by the District Court's failure to declare a mistrial based on the government's intentional delay in dismissing one count of the indictment and by the government's late withdrawal of immunity from a key defense witness.[3]
 
 
 2
 The trial testimony established the following facts: During early April, 1989, the Romulus, Michigan, police department was conducting a surveillance of the defendant and he was observed, on two occasions, leaving and entering apartment 304 in the Morgan Manor apartment complex at 10135 Diane Street in Romulus. Surveillance also took place at 15025 Ashton in Detroit where Doss' girlfriend, Vernice Greenley, resided. On two occasions he was driving a gold-colored Audi and on one occasion he was driving a van. Both vehicles were registered to Greenley. On April 13, 1989, Doss drove the Audi from the Detroit address to 10135 Diane Street. Officers from the Romulus Police Department and agents from the United States Bureau of Alcohol, Tobacco and Firearms (ATF) went to the apartment to execute a search warrant. ATF Agent Sharp remained outside the apartment building, below the west bedroom window. After knocking unannounced, the officers heard movement inside the apartment and forced entry. When the officers entered, Doss was standing by the open west bedroom window. He did not resist arrest.
 
 
 3
 Agent Sharp testified that he saw Doss throw a Nexus scale and a binocular case out the window. The binocular case contained packets of white powder later identified as heroin and cocaine, along with a charred corncob pipe. Inside the apartment, police found plastic jars and "Zip-Loc" bags containing substances commonly used to cut narcotics, a plastic colander and a glass with white powder residue, a microwave containing "white residue substance," a grinder commonly used to grind cocaine and other drug paraphernalia. In a walk-in closet in the west bedroom, the police discovered men's clothing and a shoulder holster and three clips for a firearm (two of the three clips contained ammunition). A loaded .45 caliber semi-automatic pistol that fit inside the shoulder holster was recovered approximately eight feet from where Doss was found. In a second bedroom, which appeared to be used for storage, police saw a couch and several bags of women's clothes. There was no other evidence of women's clothing or toiletries in the apartment. Police also found a Michigan driver's license and an American Express card in the name of Lonnie D. Hines. An address book was found which contained Doss' driver's license with an address of 600 Pingree in Detroit. The Audi key was found on a ring with the apartment key.
 
 
 4
 The apartment was leased to Gladys Hendricks and the utilities were in her name. A notation on the lease, initialed by Hendricks, indicated that Lonnie D. Hines occupied the apartment with her. Hendricks' name was on the mailbox. Money order receipts made out to Morgan Manor and signed by Gladys Hendricks were found in the apartment. The medicine cabinet contained two prescriptions in Doss' name and one prescription made out to Gladys Hendricks. A cassette tape removed from the telephone answering machine contained a greeting message in a male voice which a police officer identified as Doss' voice. The majority of messages on the tape were for Doss and two messages were for Hendricks in her street name, "Peppy." Personal documents belonging to Gladys Hendricks were found in the apartment; the majority of the documents had been mailed to her mother's address in Inkster, Michigan. No mail addressed to Doss was found in the apartment.
 
 
 5
 Lonnie D. Hines testified that he lived in Southfield, Michigan. He testified that he didn't know Hendricks, Greenley or the defendant and his driver's license and American Express card had been stolen two years before the trial and he had reported it to the police.
 
 
 6
 Romulus police officer Wright testified that he had assisted in a medical emergency at 10135 Diane Street, Apartment 304 in 1988. Gladys Hendricks let Wright into the apartment and stated that "her boyfriend had suffered what she thought was a seizure." Wright identified Doss as the man Hendricks referred to as her boyfriend. He also testified that Hendricks told him that she lived with Doss.
 
 
 7
 Officer Landstrom of the Romulus police testified that he stopped Doss for a traffic violation in September, 1988 and Doss produced a driver's license with the name Lonnie D. Hines. Doss was arrested for operating a motor vehicle under the influence of liquor and he was fingerprinted. A Michigan State Police officer testified that the fingerprints on the fingerprint card obtained for Lonnie D. Hines on the night of the traffic stop match Doss' fingerprints taken on April 13, 1989 when he was arrested by the Romulus police.
 
 
 8
 On May 10, 1989, Doss attended an arraignment hearing in state court. The arraignment was continued to May 17th. On May 17th, the arraignment was continued to May 25th.
 
 
 9
 On May 16th, Doss was charged in a federal complaint and he made his initial appearance in federal court on that date. On May 19th, the state case was dismissed. On June 15th, a federal indictment was returned against Doss. Following a lengthy evidentiary hearing, the District Court overruled Doss' motion to dismiss based on violation of the Speedy Trial Act. Title 18 U.S.C. Sec. 3161(b). The relevant portion of Section 3161(b) provides:
 
 
 10
 "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges...."
 
 
 11
 Doss argued that his arrest and detention by the State served as a "mere device" to restrain him until federal authorities could bring charges against him. He insisted that the time spent in state custody, either from the date of his initial arrest by state authorities or from the date negotiations between the state and federal authorities for the dismissal of state charges and the initiation of federal charges began, should be considered when calculating the thirty-day time limitation mandated by the Speedy Trial Act. United States v. Cordova, 537 F.2d 1073, 1076 (9th Cir.), cert. denied, 429 U.S. 960 (1976). The government contended that Doss' right to a speedy trial under the Sixth Amendment was not activated until the date Doss was indicted on the federal charges. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
 
 
 12
 At the evidentiary hearing, two drafts (one rough draft made in early May and one final draft made in July) of a report prepared by Agent Issa of the Bureau of Alcohol, Tobacco and Firearms were presented to the Court in support of Doss's argument. Both drafts stated, under a section entitled "State and Local Prosecution," that:
 
 
 13
 "The Wayne County Prosecutor has agreed to charge Edward D. Doss with violation of the Controlled Substance Act in order to keep him in custody. However, it has been agreed that this charge will be dismissed upon the issue of a federal indictment charging Doss with a firearms violation."
 
 
 14
 Doss contended that the statement indicated clearly that the federal and state authorities worked together, using the state arrest and state charges as a temporary device, to keep Doss in custody.
 
 
 15
 Agent Issa testified that the Wayne County prosecutor's office had not authorized him to make the statement, that he didn't recall talking to anyone in the prosecutor's office, that the statement was "a standard thing that we put in there if we are involved in a case with state and federal jurisdiction" and that at the time he made the statement there was no agreement between the Federal Government and the Wayne County Prosecutor's Office regarding Doss' prosecution. Issa could not produce another report where the same or similar language was used. Issa also testified that he was in state court on May 10, 1989 with an arrest warrant for Doss and that he spoke with Mr. Mark Bernardi, Assistant Prosecutor for Wayne County, but was unable to get custody of Doss at that time.
 
 
 16
 Bernard LaForest, the Special Agent in Charge of ATF, testified that he signed Issa's report on July 19, 1989, after it was approved by his staff and they recommended prosecution. LaForest stated that he didn't know whether he reviewed the report. He also stated the disputed paragraph in Issa's report did not describe what had factually occurred.
 
 
 17
 Officer Ondejko, the Romulus police officer in charge of the investigation of Doss testified that at the time the search warrant was executed and Doss was arrested there was no agreement between the state and federal government as to Doss' custody. He testified that the only person who could make the decision to dismiss Doss' case in the state court was Patrick Foley, the Wayne County Deputy Chief Assistant Prosecutor.
 
 
 18
 Foley testified as follows: He received a call from a federal agent or from Ondejko that the United States Attorney's Office wished to prosecute Doss on federal charges. Foley then requested that the Assistant United States Attorney contact him. Doss' case was being actively prosecuted in the state court at the time of the call. After receiving a letter from the prosecuting Assistant United States Attorney assuring him that the federal government was actively pursuing a prosecution, Foley directed that state charges against Doss be dismissed.[4] Doss' arraignment on the information was continued twice in state court in May because Foley was engaged in discussions pursuant to the dismissal of the state charges.
 
 
 19
 A memorandum from Foley to Mr. Padzieski, the Chief of Operations at the Wayne County prosecutor's Office, dated May 26, 1989 was introduced. The memorandum informed Padzieski that the state charges against Doss had been dismissed and that Doss was being prosecuted in the federal courts.
 
 
 20
 Doss introduced an affidavit from Mindy Hitchcock, the attorney who represented Doss in state court. She stated that on May 10, 1989, at Doss' arraignment hearing, Bernardi told the judge "that the state case was to be dismissed because federal agents ... then present in the courtroom informed him that the Federal Government was going to file a case ... based upon the same charges."
 
 
 21
 Bernardi testified that Issa may have told him on May 10th that the federal authorities "were going to take over the prosecution." Bernardi stated that Issa did not ask Bernardi to hold Doss in custody or to adjourn the proceedings. He testified that the first adjournment was "probably for me to find out what was going on." He said that he didn't remember seeing a warrant.
 
 
 22
 The Court held that, in light of the credible testimony presented at the evidentiary hearing, Issa's report, although "open to serious and improper misinterpretation," was not sufficient to prove violation of the Speedy Trial Act. Cordova, supra. The Court found that the state arrest was not a mere temporary device to hold the defendant because the state was actively proceeding with the prosecution even while it requested continuances. The Court found that the state, upon becoming aware that the federal government was interested in prosecuting Doss, granted the continuances in order to maintain its ability to prosecute in the event the federal prosecution didn't materialize. Doss's motion was denied.
 
 
 23
 The district court's findings of fact led to the ultimate conclusion that Doss' rights under the Sixth Amendment were not violated. Factual findings of a district court are, of course, entitled to substantial deference and will be reversed only for clear error. Anderson v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542 (1948).
 
 
 24
 In the instant case, the district court's factual findings are based on the testimony of witnesses, all of whom either rebutted any inference of a "deal" between the state and the federal government regarding Doss' prosecution or else had nothing to contribute to the interpretation of the report in evidence. The district court's denial of the defendant's motion to dismiss is not clearly erroneous. Id.; See also Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (particular deference must be given to a trial court's credibility determinations.).
 
 
 25
 Doss argues that he was seriously prejudiced by the government's deliberate delay in moving to dismiss Court V, Possession With Intent to Distribute Drugs Within 1,000 Feet of a Schoolyard, due to insufficient evidence after the jury was impaneled and the judge had read the entire indictment to the jury. The record indicates, however, that the government disagreed specifically with Doss' contention that there was insufficient evidence and moved for dismissal on the ground that the count was "marginal."[5]
 
 The Court stated:
 
 26
 "Yesterday, I read to you 5 counts in an indictment, and the last count was possession with intent to distribute controlled substance within a thousand feet of a schoolyard.
 
 
 27
 Since then, and since I read it to you, I have dismissed that count altogether, and you are to strike it from your minds completely."
 
 
 28
 Doss did not object or request an alternative instruction.
 
 
 29
 No evidence was introduced during trial regarding the dismissed count. The Court's instruction made it clear to the jury that they were to disregard the dismissed count. Doss has not presented any evidence of improper motive on the part of the government or that the jury was unable to follow the Court's instruction. We find that the circumstances surrounding the dismissal of Count V did not prevent Doss from receiving a fair trial on the remaining counts. Cf. United States v. Jackson, 418 F.2d 786 (6th Cir.1969) (ambiguous limiting instruction not sufficient to overcome testimony regarding an illegal search); Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258 (1967) (limiting instruction could not "cure" admission of presumptively void prior criminal conviction used to enhance punishment); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620 (1968) (admission of a codefendant's confession implicating defendant was prejudicial error despite clear limiting instruction).
 
 
 30
 Doss' final allegation of error is the failure of the trial court to use its supervisory powers to remedy the alleged irrevocable damage to Doss' defense as a result of the government's misconduct in revoking immunity previously granted a "key" defense witness during the trial.[6] United States v. Gjieli, 717 F.2d 968, 978-979 (6th Cir.1983), cert. denied, 465 U.S. 1101 (1984).
 
 
 31
 Prior to trial, the district court signed an order granting immunity to Gladys Hendricks and compelling her testimony at trial. During the government's proof, the prosecutor moved to withdraw Hendricks' immunity. The government had never spoken to Hendricks who was represented by her own counsel. The prosecutor stated that the government learned recently, in an informal meeting with Hendricks' attorney, that Hendricks' testimony would not be truthful because she would attempt "to take the entire weight" for Doss should she testify under immunity. At the hearing on the government's motion, Hendricks stated that if immunity were withdrawn and she were called as a witness, she would follow her attorney's advice and assert her Fifth Amendment privilege not to testify. The trial court granted the government's motion.
 
 
 32
 Doss contends that the government's alleged misconduct violated due process of law which requires that material evidence not be suppressed by the prosecution once it is requested by the defendant. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Doss also cites to Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (trial judge threatened defense witness with prosecution before testimony was given) and United States v. Hammond, 598 F.2d 1008 (5th Cir.1979) (government agent interfered substantially with testimony of a defense witness by threatening retaliation in pending cases if witness testified).
 
 
 33
 A defendant has a Sixth Amendment right to compel the attendance of witnesses on his own behalf. Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, a witness's Fifth Amendment right against compulsory self-incrimination must prevail over the defendant's Sixth Amendment right to compulsory process. Id. at 23 n. 21, 87 S.Ct. at 1920. Doss' contention is that Hendricks' testimony was available to him as long as she was granted immunity by the government and forced to testify and he relied on her testimony to exculpate him. Once she invoked her Fifth Amendment privilege to remain silent, he was unable to present evidence otherwise unavailable. Doss alleges that the withdrawal of immunity during trial was tantamount to threatening, intimidating or otherwise coercing Hendricks into not testifying and caused him to be convicted on less than all of the material evidence.
 
 
 34
 Courts have no power to order immunity to a witness under the federal use immunity statute or under the compulsory process clause of the Sixth Amendment. United States v. Pennell, 737 F.2d 521, 526 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985). Only the Executive can grant statutory immunity. Earl v. United States, 361 F.2d 531 (D.C.Cir.1966), cert. denied, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). Furthermore, it has been held that a trial judge may not "inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness." United States v. Heldt, 668 F.2d 1238, 1283 (D.C.Cir.1981) (quoting United States v. Turkish, 623 F.2d 769 (2nd Cir.1980) (Lumbard, J., concurring in part), cert. denied, 102 S.Ct. 1971 (1982)).
 
 
 35
 A few circuits have suggested that the government may be compelled to grant a defense witness immunity when the prosecutor's decision not to grant immunity has "distorted the judicial fact finding process." United States v. Paris, 827 F.2d 395, 403 (9th Cir.1987) (Kozinski, J., dissenting) (quoting United States v. Taylor, 728 F.2d 930, 935 (7th Cir.1984)). See United States v. Alessio, 528 F.2d 1079, 1082 (9th Cir.), cert. denied, 426 U.S. 948 (1976).
 
 
 36
 On the basis of broad and general statements in the record to the effect that Hendricks, once immunized, intended to absolve Doss from culpability in the crimes for which he was convicted, we are asked to find that the trial judge erred in granting the government's motion and that Doss was denied a fair trial. This we cannot do. The evidence of Doss' guilt is overwhelming. No evidence was presented in the hearing on the motion to withdraw immunity that any testimony that Hendricks might offer would be anything other than cumulative.
 
 
 37
 Furthermore, we hold that the government's decision to revoke Hendricks' immunity was a reasonable exercise of discretion. Pennell, supra. at 528 (whether an witness may commit perjury is a serious consideration in the decision to grant immunity). It is undisputed that Hendricks' counsel, not the prosecutor, advised her to claim the Fifth Amendment privilege. The role played by the government in the withdrawal of immunity after the initial grant was no less proper than if the government had refused to grant immunity in the first place.
 
 
 38
 Finally, Doss argues that, during closing argument, the prosector commented improperly on the failure of Hendricks to testify.
 
 
 39
 Following the trial court's grant of the government's motion to withdraw immunity, Doss requested that he be allowed to submit evidence to the jury that an offer of immunity had been proferred and withdrawn to Hendricks. The request was denied. However, in Doss' closing argument, counsel stated that Hendricks had not testified, that the government had granted immunity to a witness who testified against Doss and that only the government could "force" Hendricks to testify. In rebuttal, the prosector stated that "the subpoena power works both ways" and that Hendricks had "never been available to the government ... [b]ut we would suggest to you that she's been available to others." There was no objection from either counsel as to the other's argument.
 
 
 40
 The rule in the Sixth Circuit is that counsel must obtain prior court approval before arguing for an adverse inference to be drawn from the absence of a witness. United States v. Beeler, 587 F.2d 340 (6th Cir.1978). The comments of both attorneys were improper. However,
 
 
 41
 "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' Darden v. Wainwright, 699 F.2d [1031], 1036 [ (1983) ]. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).
 
 
 42
 Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986).
 
 
 43
 We find that the prosecutor's argument was no more than a substantial response to defense counsel's argument and, although improper, did not affect the jury's ability to judge the evidence fairly. United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 The Honorable Harry W. Wellford assumed Senior Judge status on January 21, 1991
 
 
 [2]
 The Honorable Thomas A. Ballantine, Jr., Chief Judge, U.S. District Court for the Western District of Kentucky, sitting by designation
 
 
 [3]
 Doss does not argue that the delay between his initial arrest and his indictment by a federal grand jury violated his due process rights under the Fifth Amendment. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)
 
 
 [4]
 The letter was dated May 11, 1989
 
 
 [5]
 Doss' argument that he was further prejudiced by a limiting instruction which did not indicate that Count V was dismissed for insufficient evidence must fail as it is unsupported by the record
 
 
 [6]
 Doss does not contend that the trial court had authority to immunize Hendricks. Pillsbury Co. v. Conboy, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). He argues instead that the court should have denied the government's motion to revoke immunity in order to "preserve judicial integrity and deter future misconduct" and its failure to do so was prejudicial error requiring this court to reverse his conviction. Gjieli at 978-979